UNITED STATES of America,

v.

Kenneth Grady HYATT and William Emery Smith.

No. 91–271–Cr–T–17.

United States District Court,
M.D. Florida,
Tampa Division.

Aug. 11, 1994.

Steven H. Sadow, Atlanta, GA, for Smith.

Robert Puterbaugh & Stephen Senn, Lakeland, FLA, for Hyatt.

### *ORDER*

KOVACHEVICH, District Judge.

This cause is before the Court on Defendants' Renewed Joint Motion to Dismiss

(Docket Number 93) and Renewed Joint Motion for Judgments of Acquittal (Docket Number 95) pursuant to Rule 29, Fed. R.Crim.Proc., and the response of the Government thereto (Docket Number 130).

## I. PROCEDURAL HISTORY

This Court issued an order denying Defendants' pre-trial Joint Motion to Dismiss (Docket Number 56) and also denied Defendants' Renewed Joint Motion to Dismiss and Defendants' Joint Motion for Judgments of Acquittal made during trial (Docket Number 107, pp. 113–119). This Court has examined the supporting memorandums provided by Defendants and has reviewed the factual basis for Defendants' Motions. The Court, in its discretion, denies both Defendants' Renewed Joint Motion to Dismiss and the Renewed Joint Motion for Judgments of Acquittal, and incorporates by reference the Government's response.

## II. BACKGROUND

On September 25, 1991, a federal grand jury returned a two-count indictment, charging defendants Kenneth Grady Hyatt and William Emery Smith with possession with intent to distribute marijuana, in violation of 21 U.S.C. section 841(a) and 18 U.S.C. section 2 (Count I), and conspiracy to possess with intent to distribute marijuana, in violation of 21 U.S.C. section 841(a)(1) and section 846 (Count II), between July 1991 and September 1991.

Defendants were tried before a jury. However, a mistrial was declared due to a hung jury. Subsequently, Defendants filed a Renewed Joint Motion to Dismiss and a Renewed Joint Motion for Judgments of Acquittal.

These charges arise out of certain transactions between the Defendants and Donald Edwin Jones, an informant for the D.E.A., and Aaron Escorza, an undercover agent for the F.B.I. The informant, Donald Jones, has an extensive criminal history and is co-operating with the authorities in order to receive a favorable sentence for a pending charge of conspiracy to suborn perjury.

At the time of the charged crimes, Defendant Hyatt owned a several thousand acre farm which included several buildings and an airstrip. According to Jones, Hyatt was interested in allowing his airstrip to be used for the trafficking of drugs. On July 10, 1991, Agent Escorza, acting in an undercover capacity, and Donald Jones, met with Defendant Hyatt at his farm. Jones and Hyatt met alone for forty-five minutes while Agent Escorza waited outside of the office. Afterwards, Hyatt, Escorza, and Jones went to inspect the airstrip. Escorza wore a recording device and there was a discussion about cutting the grass to facilitate the landing of aircraft.

On August 22, 1991, there is another recorded meeting between Hyatt, Jones, and Escorza at Hyatt's farm. Here, details about the first load of drugs are discussed. The shipment was to arrive on August 24th. Mr. Hyatt was to be away from the property when the plane arrives. The shipment was to include several hundred pounds of marijuana and Hyatt was to receive three hundred thousand dollars in cash. While Hyatt is away, William Emery Smith was to act as a sentry and confirm the arrival of the shipment. Mr. Smith shall receive fifty thousand dollars for his efforts.

Later that same evening, there is a recorded meeting at a Tampa restaurant between Hyatt, Smith, Jones, and Escorza. Here, there is more discussion about details of the shipment and how Defendants will receive payment.

On August 24, 1991, a D.E.A. undercover plane flew in several hundred pounds of marijuana, and off-loaded it at Defendant Hyatt's airstrip. Defendant Smith acted as a sentry and an initial five thousand dollars was left in the hangar for Smith, as was previously arranged.

Five days later, there was another meeting to discuss the arrival of a second, larger drug shipment. Hyatt states that his price is one and a half million dollars for the use of his airstrip. On September 5, 1991, Agent Escorza goes to Hyatt farms to pay Hyatt the balance of the three hundred thousand dollars for the first shipment. Defendants accepted the cash, and then were arrested. Subsequently, Defendants were indicted and tried.

## 1354

### III. ANALYSIS

#### A. Outrageous Government Conduct

 Defendants' Renewed Joint Motion to Dismiss is founded upon allegations of outrageous government conduct during the investigation to the extent that the conduct constituted a due process violation and compelled dismissal. In the Eleventh Circuit, *United States v. Haimowitz,* 725 F.2d 1561, 1577 (11th Circuit), *cert. denied,* 469 U.S. 1072, 105 S.Ct. 563, 83 L.Ed.2d 504 (1984), set the standard for determining whether outrageous conduct exists.

> Whether outrageous government conduct exists turns on the totality of the circumstances with no single factor controlling and the defense can only be invoked in the rarest and most outrageous of circumstances. *Id.*

The conduct must be so outrageous as to shock the universal sense of justice. *United States v. Arango,* 853 F.2d 818, 827 (11th Circuit). The Court is not persuaded that the Government's actions in the instant case meet the definition of outrageous conduct. The fact that the Government initiated the negotiations and provided the transportation for the narcotics as well as the narcotics does not constitute a due process violation of Defendants' rights. *United States v. Walther,* 867 F.2d 1334, 1338–39 (11th Cir.1989), *cert. denied,* 493 U.S. 848, 110 S.Ct. 144, 107 L.Ed.2d 103 (1989).

This is a reverse sting operation. The Eleventh Circuit has rejected challenges to the reverse sting method of investigation on numerous occasions. *United States v. Walther,* 867 F.2d. at 1339. In the instant case, the evidence shows that the Government merely provided the opportunity for Defendants to participate in the criminal ventures. This does not constitute a violation of due process. *United States v. Savage,* 701 F.2d 867, 869 (11th Cir.1983).

This Court specifically finds that throughout this situation Defendants could have merely declined when approached about becoming involved in an illegal scheme. However, they were offered staggering sums of money and they committed these crimes because they wanted to receive the money. Accordingly, the responsibility for the exercise of the Defendants' judgment must lie with these Defendants, and Defendants' Motion for Dismissal on the issue of outrageous government conduct is denied.

#### B. Use of Government Informant

 Defendants contend that their due process rights were violated because the Government allowed the extremely cunning, ruthless, and persuasive informant, Donald Edwin Jones, to lure the Defendants into criminal acts. Defendants further contend that there were certain acts by the informant that rose to the level of government coercion against the Defendants.

Defendants would have this Court believe that Defendants were extremely naive persons who were duped into committing a crime by some type of hypnotic persuasion, even though Defendants were very successful in other business pursuits. The Court is not persuaded by this argument and finds that, again, had the Defendants been law-abiding citizens, they could have simply refused when presented with an illegal opportunity. However, they committed these crimes because they wanted to receive large sums of money. In addition, the fact that the informant used in the instant case had a significant criminal history and was otherwise of questionable character does not constitute a due process violation of the Defendants' rights. *United States v. Collins,* 972 F.2d 1385, 1396–97 (5th Cir.1992), *cert. denied,* —— U.S. ——, 113 S.Ct. 1812, 123 L.Ed.2d 444 (1993). To the contrary, use of such individuals is a common practice accepted by the courts because "individuals of questionable character often times make the best informants, as their willingness to engage in criminal activities must be convincing to the other participants." *Id.* Accordingly, the Court finds no violation of Defendants' due process rights.

#### C. Entrapment

Defendants further contend that they are entitled to judgments of acquittal because the evidence establishes as a matter of law that Defendant Hyatt was entrapped. Defendants further contend that the Govern-

ment failed to prove beyond a reasonable doubt that Defendant Hyatt was predisposed to commit the offense charged.

■ Entrapment consists of two elements: government inducement of the crime and a lack of predisposition by the defendant to commit the crime. *Mathews v. United States,* 485 U.S. 58, 108 S.Ct. 883, 99 L.Ed.2d 54 (1988). In order to raise the defense of entrapment, the defense must present sufficient evidence of government inducement, and also show an element of persuasion or mild coercion. *United States v. Andrews,* 765 F.2d 1491, 1499 (11th Cir.1985) (citing *United States v. Hill,* 626 F.2d 1301 (5th Cir.1980)). Once the defendant makes such a showing, the burden shifts to the government to demonstrate beyond a reasonable doubt that the defendant was predisposed to commit the offense charged. *Andrews,* 765 F.2d at 1499 (citing *United States. v. Dickens,* 524 F.2d 441, 444 (5th Cir.1975)).

■ The Court finds that under the law of the Eleventh Circuit, entrapment as a matter of law is not a viable defense. *United States v. Markovic,* 911 F.2d 613, 616 (11th Cir.1990); *United States v. Struyf,* 701 F.2d 875, 877 n. 6 (11th Cir.1983). Rather, it is a defense of fact for the jury to decide. *United States v. Reed,* 977 F.2d 14, 18 (1st Cir. 1992). The standard of review once a jury has been instructed on entrapment but has rejected the defense is "whether, when viewing the evidence in the light most favorable to the government, a reasonable jury could find, beyond a reasonable doubt, that the defendants were predisposed to commit the offense." *United States v. Hudson,* 982 F.2d 160, 162 (5th Cir.1993).

■ The Court finds that there is sufficient evidence to demonstrate that Defendants were indeed predisposed to go forward and commit a crime. Defendant Hyatt drove Agent Escorza around the property and Defendant Smith acted as a sentry. Furthermore, there is no evidence demonstrating persuasion or mild coercion by the Government. Defendants were presented with an opportunity to commit an illegal act and they willingly seized it. Accordingly, Defendants'

Motion for Judgment of Acquittal on the issue of entrapment is denied.

### D. Possession

■ Defendants also seek judgments of acquittal on the grounds that neither Defendant actually possessed marijuana with intent to distribute. However, the Court finds that Defendants were in constructive possession of the narcotics because the evidence clearly demonstrates that Defendants exercised dominion and control over the marijuana.

Defendants permitted the marijuana to be brought on to the property. Mr. Smith acted as a lookout to make sure that the marijuana remained in Defendants' possession and that it would not be seized by law enforcement or others. Mr. Hyatt drove Agent Escorza around the property to insure him that it was a safe place for their purposes and that the custody and control of the narcotics would remain in their hands. Defendants joined in that possession constructively by their willingness to permit the agents to use the property to bring in the drugs and to insure its safe arrival and removal from that property.

Furthermore, the evidence also shows that Defendants were well aware of the intent to distribute. The evidence demonstrates that the payment Defendants were to receive was represented to be proceeds of the drugs that were flown onto the property, taken off, then sold. Defendants were told that they would receive the money after the drugs were sold. Consequently, both Defendants understood that the money which they were to receive would be the proceeds from the sale of the drugs. The Court finds that there is no question that these Defendants were willing to accept the drug proceeds as payment for their participation in facilitating these illegal ventures and, accordingly, there is a reasonable inference of the intent to possess for distribution.

### E. Conspiracy

■ Defendants also seek judgments of acquittal on the grounds that there was no evidence to allow a finding that Defendants conspired to possess either marijuana or cocaine with intent to distribute. The Court

finds that the evidence demonstrates that each Defendant knew of the overall scheme, had a stake in it, and did his part to make it succeed. Furthermore, the evidence shows that both Defendants agreed to constructively possess the narcotics. This issue was fully argued at the time of the close of the Government's case, and at the close of evidence, and denied by the Court.

The Court finds that Defendants have submitted no materially significant authority that would warrant a reconsideration of the Court's ruling. Accordingly, Defendants' Renewed Joint Motion for Judgments of Acquittal on the issue of conspiracy is denied.

## IV. CONCLUSION

Accordingly, it is hereby **ORDERED** that Defendants' Renewed Joint Motion to Dismiss and Renewed Joint Motion for Judgments of Acquittal are **denied.**

**DONE AND ORDERED.**