[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

————————————————

No. 18-10002
Non-Argument Calendar

————————————————

D.C. Docket No. 1:17-cr-20192-DPG-1


UNITED STATES OF AMERICA,

Plaintiff-Appellee,

versus

DAVID ANTHONY GORDON,

Defendant-Appellant.


————————————————

Appeal from the United States District Court
for the Southern District of Florida

————————————————

(July 5, 2019)

Before MARTIN, BRANCH, and JULIE CARNES, Circuit Judges.

PER CURIAM:

David Gordon appeals his 120-month sentence for conspiring to import five or more kilograms of cocaine in violation of 21 U.S.C. §§ 960(a)(1), (b)(1)(B)(i), & 963. Gordon advances several arguments on appeal. He says the district court erred in granting the government's motion to transfer his sentencing to a different district court judge; the government breached his plea agreement; and the sentence appeal waiver in his plea agreement is unenforceable. Each of these arguments fails. Gordon also lodges two challenges to his sentence, both of which are barred by the sentence appeal waiver. On this record, we affirm in part and dismiss in part.

## I.

A grand jury returned a three-count indictment against Gordon and Brianna Byrd for their involvement in a cocaine importation and distribution conspiracy. Gordon later debriefed law enforcement on the facts underlying these charges. In that debriefing, Gordon admitted he would receive cocaine imported from Suriname by way of human couriers. Gordon, sometimes accompanied by a co-conspirator, would then retrieve the cocaine from the couriers at a hotel. On the day he and Byrd were arrested, Gordon picked up Byrd in his car and drove her to the hotel. En route, Gordon told Byrd she would pick up a package for him from a man at the hotel, who, unbeknownst to Gordon and Byrd, was working as a confidential source. Via his cell phone, Gordon told his contact in Suriname,

2

Brille,[1] what Byrd looked like, and Brille sent Gordon a photo of the courier. Upon arriving at the hotel, Gordon dropped off Byrd, told her she would be meeting this man in the lobby, and gave her his cell phone so he could guide her. Once inside the hotel, Byrd called Gordon and said she didn't see the man. Gordon told her to go to the front desk. Shortly thereafter, Gordon and Byrd were arrested. Gordon maintained Byrd didn't know what the package was or that drugs were involved.

Gordon's case was initially assigned to District Judge Darrin P. Gayles. While the case was with Judge Gayles, Gordon entered into a written plea agreement with the government. In that document, Gordon agreed to plead guilty to one count of conspiracy to import five or more kilograms of cocaine and waive his right to appeal his sentence, unless it exceeded the statutory maximum, was the product of an upward departure or variance "from the advisory guideline range that the Court establishes at sentencing," or if the government appealed. In exchange, the government agreed to dismiss the remaining charges, as well as to recommend safety valve relief and a reduction for acceptance of responsibility. See United States Sentencing Guidelines §§ 3E1.1, 5C1.2. The safety valve recommendation was conditioned on Gordon providing "a written statement truthfully setting forth all information and evidence [he] ha[d] concerning the offense or offenses that

---

[1] Gordon told the government in his debriefing that he previously met Brille in person.

3

were part of the same course of conduct or of a common scheme or plan as charged in the indictment." The acceptance of responsibility recommendation was conditioned on Gordon not "commit[ting] any misconduct after entering into this plea agreement, including but not limited to committing a state or federal offense . . . or making false statements or misrepresentations to any governmental entity or official." The plea agreement specifically noted that district court was not bound by any of its recommendations. Gordon pled guilty pursuant to that agreement.

Before Gordon's sentencing, he testified at Byrd's trial as her witness. District Judge Patricia A. Seitz presided over Byrd's trial. The thrust of Gordon's testimony was that Byrd did not know she was picking up a package of cocaine.

Believing his testimony to have been untruthful in various respects, the government filed a sentencing memorandum arguing Gordon was no longer eligible for an acceptance of responsibility reduction or safety valve relief. To the contrary, the government argued that Gordon should get a longer sentence, because he obstructed justice. See USSG § 3C1.1. Gordon, the government said, was no longer eligible for safety valve relief because the contradictions between his trial testimony and his debriefing "cast[] serious doubt on the veracity of much, if not all, of the information that [Gordon] provided during his safety valve debrief[ing]." And he wasn't eligible for an acceptance of responsibility reduction because, given his untruthful testimony, "it is impossible to know which, if any, account of [his]

4

criminal conduct is accurate." In the government's view, Gordon "perjured himself in an attempt to assist Byrd in her defense that she did not know she was picking up cocaine when she went to meet the drug courier at the [hotel]."

In support, the government highlighted a number of contradictions between Gordon's testimony at Byrd's trial and documentary evidence. The government also pointed to contradictions between Gordon's testimony and his debriefing. For instance, at Byrd's trial, Gordon claimed that, while he was in the car with Byrd on the way to the pick-up location, he did not speak with Brille over the phone. His call log indicated otherwise. Neither did Gordon change his testimony after the government confronted him with the log. Gordon testified he sent Brille a text message asking what Byrd was wearing, when documentation of those text messages made clear that Brille had sent them. Additionally, Gordon testified he had never met Brille. But, in his debriefing, Gordon "reported being introduced in person to 'Brille' . . . while out partying together" months before the events underlying his and Byrd's arrests.

The government filed a motion to transfer Gordon's sentencing to Judge Seitz, because Judge Seitz presided over Byrd's trial and thus observed Gordon testify untruthfully. Gordon opposed the motion, arguing there was no authority for the government's request, so it was therefore "a blatant attempt at forum shopping." Judge Gayles granted the government's motion.

5

At sentencing, Gordon reiterated his objection to the transfer to Judge Seitz, but he couldn't identify how he had been prejudiced.  The government and Gordon rehashed the arguments made in their memoranda regarding acceptance of responsibility and safety valve relief.  Then, after hearing testimony from Gordon and Byrd, Judge Seitz found that Gordon "obstructed justice by his testimony during the course of the trial" and added the two-level obstruction-of-justice enhancement to Gordon's offense level.  See USSG 3C1.1.  Judge Seitz also denied him an acceptance of responsibility reduction and safety valve relief.  Judge Seitz calculated Gordon's guidelines range as 120 months, the mandatory minimum, and sentenced him to the 120 months.

This is Gordon's appeal.

## II.

Gordon says the district court erred by granting the government's motion to transfer his sentencing from Judge Gayles to Judge Seitz.  He is mistaken.

"District Judges have the inherent power to transfer cases from one to another for the expeditious administration of justice."  United States v. Stone, 411 F.2d 597, 599 (5th Cir. 1969).[2]  They "may by rule, order or consent transfer cases between themselves."  Id. at 598; see also S.D. Fla. I.O.P. 2.07.00 ("Judges may

---

[2] In Bonner v. City of Prichard, 661 F.2d 1206 (11th Cir. 1981) (en banc), we adopted as binding precedent all decisions of the former Fifth Circuit handed down before October 1, 1981.  Id. at 1209.

6

confer and directly transfer all or any part of a case on the judge's docket to any consenting judge.  Notice shall be provided to all parties.").

Both parties agree we should review this issue for abuse of discretion.  We believe this is the correct standard of review.  The power to transfer is expressly provided by local rule.  S.D. Fla. I.O.P. 2.07.00.  And we review a district court's application of local rules for an abuse of discretion.  Reese v. Herbert, 527 F.3d 1253, 1267 n.22 (11th Cir. 2008).  "The abuse of discretion standard . . . allow[s] a range of choice for the district court, so long as that choice does not constitute a clear error of judgment."  United States v. Kelly, 888 F.2d 732, 745 (11th Cir. 1989).

Granting the government's motion to transfer was not a clear error of judgment.  Judge Seitz presided over Byrd's trial and, therefore, observed Gordon's testimony.  As the government's sentencing memorandum made clear, that testimony would be a focus of its arguments at sentencing.  Judge Seitz's observation of Gordon's testimony made her well-suited to find facts relevant to issues that would arise at sentencing, such as whether an obstruction-of-justice enhancement was warranted.  Cf. United States v. Arango, 853 F.2d 818, 823 (11th Cir. 1988) (noting that we review a trial court's credibility determinations for clear error because "[t]he trial court had the opportunity to hear and observe the witnesses").  Thus, Judge Gayles could have reasonably determined that

7

transferring the sentencing to Judge Seitz would further "the expeditious administration of justice." Stone, 411 F.2d at 599.

### III.

Gordon says the government breached his plea agreement by failing to recommend the acceptance of responsibility reduction and safety valve relief. He is again mistaken.

We review de novo whether the government has breached a plea agreement. United States v. Horsfall, 552 F.3d 1275, 1281 (11th Cir. 2008) (per curiam). "[W]hen a plea rests in any significant degree on a promise or agreement of the prosecutor, so that it can be said to be part of the inducement or consideration, such promise must be fulfilled." Santobello v. New York, 404 U.S. 257, 262, 92 S. Ct. 495, 499 (1971); see also United States v. Taylor, 77 F.3d 368, 370 (11th Cir. 1996) ("The government is bound by any material promises it makes to a defendant as part of a plea agreement that induces the defendant to plead guilty."). "Whether the government violated the agreement is judged according to the defendant's reasonable understanding at the time he entered his plea." United States v. Boatner, 966 F.2d 1575, 1578 (11th Cir. 1992).

Gordon says he reasonably understood the government would recommend safety valve relief and an acceptance of responsibility reduction, and that, in failing to do so, the government breached the plea agreement. This would be true if the

8

government's agreement was not expressly limited by conditions that Gordon failed to fulfill.

Gordon should have known that testifying in a manner that contradicted his debriefing, and that was inconsistent with documentary evidence would jeopardize his eligibility for the government's recommendations. Indeed, the government's agreement to recommend an acceptance of responsibility reduction was conditioned on Gordon not "making false statements or misrepresentations to any governmental entity or official." Beyond that, a reasonable person in Gordon's position would have understood that his conflicting testimony would cast doubt on the truthfulness of his debriefing. And a completely forthright debriefing is what the plea agreement demanded of Gordon in order to trigger the government's obligation to recommend safety valve relief.

## IV.

Gordon also offers three arguments challenging the validity of the sentence appeal waiver in his plea agreement. None succeed.

We review de novo the validity of a sentence appeal waiver. United States v. Johnson, 541 F.3d 1064, 1066 (11th Cir. 2008).

First, Gordon argues that the government's breach of the plea agreement invalidated the sentence appeal waiver. This argument fails, because the government did not breach the plea agreement.

9

Second, Gordon argues that the district court's failure to sentence him in accord with the plea agreement invalidated the sentence appeal waiver.  Not so. The district court was neither a party to nor bound by the plea agreement.  The agreement's plain terms and Federal Rule of Criminal Procedure 11 make that clear.  See Fed. R. Crim. P. 11(c)(1)(B) (specifically noting that a plea agreement "may specify that an attorney for the government will . . . recommend . . . that a particular provision of the Sentencing Guidelines . . . does or does not apply," and observing that "such a recommendation or request does not bind the court").

Third, Gordon says that the sentence appeal waiver was invalidated when the district court deviated from the plea agreement without prior notice in violation of Federal Rule of Criminal Procedure 11(c)(1)(C).  Even if Rule 11(c)(1)(C) does require prior notice, the rule does not apply here.  Rule 11(c)(1)(C) provides that a plea agreement "may specify that an attorney for the government will . . . agree that a specific sentence or sentencing range is the appropriate disposition of the case, or that a particular provision of the Sentencing guidelines, or policy statement, or sentencing factor does or does not apply" and that "such a recommendation or request binds the court once the court accepts the plea agreement."  Fed. R. Crim. P. 11(c)(1)(C).  But, in the plea agreement, the government said only that it would recommend safety valve relief and an acceptance of responsibility reduction—it did not thereby "agree that a specific

10

sentence or sentencing range is the appropriate disposition" or that "a particular provision of the Sentencing Guidelines . . . does . . . apply." Id.

## V.

Finally, Gordon levels two challenges to his sentence. Both are barred by the sentence appeal waiver. Therefore, these components of Gordon's appeal are due to be dismissed. See, e.g., United States v. Buchanan, 131 F.3d 1005, 1008–09 (11th Cir. 1997) (per curiam).

First, Gordon says that his 120-month sentence qualifies "as an upward variance from the correct guidelines range" and therefore falls within the sentence appeal waiver's exception for upward departures or variances. But the appeal waiver permitted no exception for upward departures or variances from the "correct guidelines range." Instead, it allowed an appeal when the district court departed or varied upwardly "from the advisory guideline range that the Court establishes at sentencing." The district court did not deviate from the guideline range it established. Thus, Gordon's argument is barred by the appeal waiver.

Second, Gordon says that his sentence was unreasonable. But the appeal waiver did not include an exception for reasonableness challenges. Thus, this argument is also barred by the appeal waiver.

**DISMISSED IN PART, AFFIRMED IN PART.**