UNITED STATES of America,
Plaintiff-Appellee,

v.

Andrew B. SOUDER,
Defendant-Appellant.

No. 85–5163.

United States Court of Appeals,
Eleventh Circuit.

Feb. 24, 1986.

Arthur W. Tifford, Miami, Fla., for defendant-appellant.

Stanley Marcus, U.S. Atty., Eileen O'Connor, Linda Collins-Hertz, Jon May, Asst. U.S. Attys., Miami, Fla., for plaintiff-appellee.

Before HILL and ANDERSON, Circuit Judges, and TUTTLE, Senior Circuit Judge.

TUTTLE, Senior Circuit Judge:

This is an appeal from a jury verdict of guilty on an eight count indictment. Count one charged a conspiracy between appellant and Sisolak and other unknown persons to possess with intent to distribute a quantity of cocaine. The second count charged Souder and Sisolak with possessing with intent to distribute the same cocaine. Count three charged Souder and Sisolak with conspiring to possess with intent to distribute a quantity of marijuana. Count four charged the same defendants with knowingly and intentionally possessing with intent to distribute the same marijuana. Count five charged the same defendants with a conspiracy to possess with intent to distribute the same cocaine as mentioned in counts one and two, while being citizens of the United States. Count six charged the defendants, while being citizens of the United States on board a vessel in the intracoastal waterway with knowingly and intentionally possessing with intent to distribute the same quantity of cocaine. Count seven charged the defendants while being on board a vessel and citizens of the United States with a conspiracy to possess with intent to distribute the same quantity of marijuana. Count eight charged the substantive offense of their being on board a vessel in the intracoastal waterway while being citizens of the United States knowingly and intentionally possessing with intent to distribute the same quantity of marijuana.

The trial court sentenced appellant to terms of 10 years on the counts relating to cocaine and to five years on the counts relating to marijuana with a total special parole term of three years. The court ordered that all sentences be served concurrently.

## I. STATEMENT OF THE CASE

At approximately 6:10 p.m. on May 14, 1984, Customs Patrol Officer McGinty and Ft. Lauderdale Marine Officers Semrow and Mashley were patrolling the area of the intracoastal waterway in Broward County, Florida in an unmarked Ft. Lauderdale police department vessel when they observed a 30 ft. Wellcraft Scarab, center console, open sport fisherman heading North on the intracoastal waterway. They noted that one of the two engines was out of the water and that the only fishing rod and reel they saw was upside down in the rod holder. They saw two white males on board. Officer McGinty then put on his Customs identification jacket and directed Officer Mashley to maneuver the boat towards the Scarab.

When the officers approached the Scarab, McGinty asked appellant, who appeared to be the captain, to put the vessel in neutral. Appellant complied. McGinty then asked appellant where he was coming from. Appellant replied, "offshore," hesitated and then added, "fishing." When asked how far "offshore," appellant again hesitated and added excitely, "I could see land all the time."

By this time, the officers were within a few feet of the Scarab. McGinty then noticed that the registration letters on the bow, "CE," were "ones unfamiliar to him and not commonly seen in Broward County." At about this time, McGinty noticed that the bow of the boat was riding low in the water, indicating excess weight. He also smelled a strong odor of marijuana coming from the boat, which prompted him to declare "I can smell it. Watch 'em, it's loaded."

McGinty then told appellant that he was coming aboard. Upon boarding the boat McGinty directed appellant and the other person on board, Sisolak, to step to the rear of the boat. McGinty then opened the cuddy door and immediately saw bales of marijuana and noticed a strong marijuana smell coming from that area. He then drew his weapon and placed appellant and Sisolak under arrest. Officer Semrow boarded the boat and handcuffed both men.

After arresting both men, McGinty drove the boat to the 15th Street police office

approximately one-half mile away. McGinty testified that he had difficulty handling the boat because of the marijuana in the bow.

At the police dock, appellant and Sisolak were separated and placed in the custody of officers Ronald Bliss and Dan Mashley. The boat was tied to the dock and placed in the custody of officer Semrow.

Appellant was left in a room with officer Karen Bull who was preoccupied with writing reports unrelated to appellant's arrest.

Without being questioned or prompted, appellant stated, "I can't believe it. I can't believe I got caught, just out to make a fast buck and I got caught. I can't believe it." Twenty or thirty minutes after appellant made these statements, McGinty entered the room and read appellant his *Miranda* rights. As McGinty was explaining these rights, appellant stated, "you just got everything I had."

Appellant declined to sign a waiver of his rights and indicated that he wanted an attorney. Appellant claims that he was thereafter questioned by Karen Bull. The government, however, contends that appellant volunteered information. The objectionable statement related to the travel time from the Bahamas. Appellant stated, "... The ocean was flat until we got ten miles out and then the water got choppy."

Appellant claims that he was questioned a second time in violation of *Miranda* by Customs Officer Schlessinger. In response to Schlessinger's questioning, appellant admitted that he was a U.S. citizen. The government in its statement of the facts states merely that, "After being *Mirandized* by Agent Ledwith, the appellant provided his name, address, occupation and said that he was a citizen of the United States. He also told CPO Schlessinger that he was a United States citizen.[1]

Later that evening, Officer Bliss searched appellant and removed from his pocket a folded piece of yellow paper with the inscription:

699 LBS, rate $150 NL

104, 850

2 baseballs

Officer Bliss gave the note to Special Agent Ledwith of the Drug Enforcement Administration. Upon seeing the reference to "two baseballs," Agent Ledwith told McGinty to cease unloading the marijuana from the boat and to search for two kilograms of cocaine. Within seconds of Agent Ledwith's instructions, McGinty found a brown zippered racketball bag under some bales of marijuana. McGinty opened the bag and found two plastic bags containing two baseball shaped kilograms of cocaine wrapped in duct tape. He also found an air to ground radio.

Appellant was arraigned on June 29, 1984. He pled not guilty to all eight counts. On November 8, 1984, appellant's first court appointed counsel withdrew. On December 18, 1984, appellant's second appointed counsel moved for a continuance on the grounds that he lacked sufficient time to prepare for trial. This motion was denied.

Trial was scheduled for December 18. Before trial, however, an evidentiary hearing was held on appellant's various motions to suppress. All of appellant's motions to suppress were denied.[2]

The court sentenced appellant on each count, although appellant's lawyer was not present during the sentencing.

## II. ISSUES PRESENTED

1. Whether the appellant was denied his Sixth Amendment right to counsel at sentencing.

2. Whether the trial court properly denied appellant's motion for judgment of acquittal.

---

**1.** We need not resolve this issue for although appellant objected to the admission of these other statements by him, he does not allege errors as to their admission on this appeal.

**2.** As noted above, appellant does not here complain of the trial court's denial of the motions to suppress the post arrest statements.

3. Whether the trial court properly denied the appellant's motions for severance, election and dismissal.

4. Whether appellant's claim of ineffective assistance of counsel may be heard on direct appeal, and if so, whether appellant was denied effective assistance of counsel.

5. Whether the trial court properly denied appellant's request to take handwriting exemplars from a government witness while the witness was being cross-examined.

6. Whether the warrantless search of the athletic bag found on board the seized vessel violated appellant's Fourth Amendment rights.

## III. DISCUSSION

### (1) *Sentencing of Appellant in Absence of his Counsel*

■ The government concedes, as, of course, it must, that the absence of appellant's counsel at the sentencing session invalidates the sentences. The case must therefore be sent back for resentencing by the trial court.

### (2) *Judgment of Acquittal*

The appellant moved for a judgment of acquittal at the close of the government's case, based upon legally insufficient evidence as to the conspiracies alleged in Counts One, Three, Five and Seven. The thrust of appellant's argument with respect to this issue is that there was no evidence from which the jury could find that there was any intent to distribute the marijuana or cocaine found on board the boat. Appellant bases his argument primarily upon the question whether 700 pounds of marijuana and two kilos of cocaine are sufficiently large in amount to warrant submitting to the jury the question whether there was the required intent to distribute. So far as relates to the proof of the existence of a conspiracy, the government relies on *United States v. Luiz-Gonzalez*, 719 F.2d 1539, 1544 (11th Cir.1983); *United States v. Miller*, 693 F.2d 1051, 1053 (11th Cir.1982);

*United States v. Groce*, 682 F.2d 1359, 1365 (11th Cir.1982). These cases all deal with the inferences that may be drawn by a jury from the presence of a person on board a small vessel where the presence of a load of marijuana is obvious: "When crewmen are found board a vessel on which the presence of contraband is obvious, a conspiracy may be inferred." *United States v. Groce, supra*, at 1365.

■ There can be little doubt that the jury here could infer from the presence of 700 pounds of marijuana in a number of bales, that Souder was in a conspiracy with either his companion on the boat or other persons unknown to possess the marijuana.

Then, with respect to the charge of insufficient evidence of Souder's intent to distribute, this record discloses more than mere presence on the boat by Souder. It contains his own statement: "I can't believe it. I can't believe I got caught, *just out to make a fast buck* and I got caught. I can't believe it." (Emphasis added.) What else could Souder have referred to about his making a fast buck if he had no intent to distribute the marijuana? We find no merit in this ground of appeal.

### (3) *Motions for Severance and Dismissal*

■ Appellant argues that the trial court erred by not granting his motion for severance of counts, election of counts, and dismissal of all but one of either counts one, three, five and seven. Appellant complains that this failure subjected him to double jeopardy.

Appellant argues that counts one, three, five, and seven are multiplicious. According to appellants, the government has divided a single agreement into four separate counts and should therefore be required to elect among the counts and to dismiss all but one. Appellant maintains that there was but one conspiracy, if any at all. In addition, appellant argues that counts two and six and four and eight are likewise multiplicious and violative of the double jeopardy clause.

We think that the four counts relating to each drug require proof of different facts, a test articulated in *Blockburger v. United States*, 284 U.S. 299, 304, 52 S.Ct. 180, 182, 76 L.Ed. 306 (1932). Moreover, the government argues that the legislative history of § 955a(a) shows that Congress intended violations under §§ 955a(a) and 955a(c) to be separate and distinct offenses from violations under 21 U.S.C. § 841(a) and § 846.[3] In *Albernaz v. United States*, 450 U.S. 333, 101 S.Ct. 1137, 67 L.Ed.2d 275 (1981), the Supreme Court upheld convictions for conspiracy to import narcotics and conspiracy to possess with intent to distribute the same narcotics, despite the existence of a single agreement. Moreover, the Court there said:

> In resolving petitioners' initial contention that Congress did not intend to authorize multiple punishment for violations of §§ 846 and 963, our starting point must be the language of the statutes. Absent a "clearly express legislative intention to the contrary, that language must ordinarily be regarded as conclusive." *Consumers Product Safety Commission v. GTE Sylvania, Inc.*, 447 U.S. 102, 108 [100 S.Ct. 2051, 2056, 64 L.Ed. 766] (1980). Here, we confront separate offenses with separate penalty provisions that are contained in distinct Subchapters of the Act. The provisions are unambiguous on their face and each authorizes punishment for a violation of its terms. Petitioners contend, however, that the question presented is not whether the statutes are facially ambiguous, but whether consecutive sentences may be imposed when convictions under those statutes arise from participation in a single conspiracy with multiple objectives—a question raised, rather than resolved, by the existence of both provisions.
>
> The answer to petitioners' contention is found, we believe, in application of the rule announced by this Court in *Blockburger v. United States*, 284 U.S. 299 [52

S.Ct. 180, 76 L.Ed. 306] (1932), and most recently applied last Term in *Whalen v. United States*, 445 U.S. 684 [100 S.Ct. 1432, 63 L.Ed.2d 715] (1980). In *Whalen*, the Court explained that the "rule of statutory construction" stated in *Blockburger* is to be used "to determine whether Congress has in a given situation provided that two statutory offenses may be punished cumulatively." 445 U.S. at 691 [100 S.Ct. at 1437].

450 U.S. at 336, 101 S.Ct. at 1141.

It is clear in this case that Congress has unambiguously provided two separate crimes and that to prove the two crimes, different evidence must be submitted to the jury.

Moreover, it should be noted that in this case no consecutive terms of imprisonment were imposed. All sentences were to be served concurrently.

The Court in *Albernaz* also made reference to *Iannelli v. United States*, 420 U.S. 770, 785, n. 17, 95 S.Ct. 1284, 1293, n. 17, 43 L.Ed.2d 616 (1975).

The Court also cited *Gore v. United States*, 357 U.S. 386, 78 S.Ct. 1280, 2 L.Ed.2d 1405 (1958), where, rejecting an opportunity to abandon *Blockburger*, the Court said: "The fact that an offender violates by a single transaction several regulatory controls devised by Congress as means for dealing with a social evil as deleterious as it is difficult to combat does not make the several different regulatory controls single and identic." 357 U.S. at 389, 78 S.Ct. at 1283.

We find no error in the action of the trial court in overruling this motion by appellant.

### (4) *Ineffective Assistance of Counsel*

■ Appellant's contention that he had ineffective assistance of counsel may not be disposed of on a direct appeal. Such a contention must be made in a context in which a factual hearing may be conducted.

---

**3.** The 955a section establishes a crime that is different from that established in §§ 841 and 846. A crime under § 955a occurs when acts prohibited by §§ 841 and 846 are committed by a person while on a vessel and while being a citizen of the United States.

The issue can be raised only by a collateral attack, as, for instance, under 28 U.S.C. § 2255.

### (5) *Denial of Appellant's Request to Take Handwriting Exemplars From a Government Witness*

As noted above, a slip of paper was taken from Souder's pocket after he was arrested. The government made no effort to prove that the writing on the slip was in Souder's handwriting. However, it was testified to that it represented the price for a pound of marijuana and it also mentioned two "baseballs" which government experts testified referred to two kilos of cocaine.

After testifying twice, Government Agent Ledwith was called for the third time to testify as to the value of two kilos of cocaine. Then, in what purported to be cross-examination of Ledwith, he was asked by appellant's counsel to write in his own hand the numbers that appeared on the slip of paper. Upon government objection, the court ruled out this testimony and Ledwith was excused.

Later, at the conclusion of the trial, the court offered counsel an opportunity to discuss any matters with which they were concerned. Counsel for appellant undertook to explain why he had wished to have the exemplar written by the witness. He made no motion and he did not seek the opportunity to recall Ledwith as his witness. He now complains of the failure of the trial court to require the government to supply an exemplar of Ledwith's writing.

It was, of course, not error for the trial court to refuse to permit examination of Ledwith in cross-examination as to a matter outside the scope of the direct. The failure of the appellant to make a formal motion to require the government to furnish an exemplar at this stage of the trial, prevents our consideration of his contention that it was error for the trial court not to require such a document. As stated by the court, there was ample time for the defendant to have obtained such an exemplar before trial and to tender it in evidence.

We conclude that the trial court made no error with respect to this matter. This is especially true since the government made no contention that the paper had been written by Souder. The government relied merely on the fact that Souder had it in his possession at the time of his arrest and to indicate the value of the illegal contraband in Souder's possession he was charged and in order to supply the jury additional evidence from which it could infer that he intended to distribute it in the United States.

### (6) *The Warrantless Search of the Athletic Bag Found Board the Seized Vessel*

Appellant argues that the warrantless search of the boat's cabin and the retrieval and search of the athletic bag violated his Fourth Amendment rights as announced in *United States v. Chadwick*, 433 U.S. 1, 97 S.Ct. 2476, 53 L.Ed.2d 538 (1977). *Chadwick* involved the warrantless search of a footlocker taken from the trunk of an automobile after the footlocker was in the exclusive control of federal officials. The Court held that the search was unconstitutional because it fit none of the exceptions to the warrant requirement. This search, however, is strictly in accordance with the provisions of the federal statutes involving a Customs stop. 19 U.S.C. § 1581(a) provides that any "officer of the Customs may at any time go on board of any vessel ... at any place in the United States ... and search the vessel and every part thereof and any person, trunk, package or cargo on board." The Supreme Court in *United States v. Villamonte Marquez*, 462 U.S. 579, 103 S.Ct. 2573, 77 L.Ed.2d 22 (1983), upheld the constitutionality of that statute. *See also United States v. Andreu*, 715 F.2d 1497, 1500 (11th Cir.1983) (agents with probable cause to search vessel may search every part of the vessel without the necessity for a warrant (citing *United States v. Gollwitzer*, 697 F.2d 1357, 1362 (11th Cir.1983).

## IV.  CONCLUSION

As we have noted, the sentences are vacated.  In all other respects, the judgment of the trial court is affirmed.

Sentences VACATED, REMANDED for further sentencing.  Otherwise, judgments AFFIRMED.