**UNITED STATES of America**

v.

**Sharvonne McKINNON.**

**Nos. 91–299–CR–T–17B, 97–2815–CIV–T–17B.**

United States District Court, M.D. Florida, Tampa Division.

Feb. 24, 1998.

Darlene Calzon Barror, Law Office of Darlene C. Barror, Tampa, FL, for Sharvonne McKinnon, plaintiff.

Darlene Calzon Barror, Law Office of Darlene C. Barror, Tampa, FL, for USA, defendant.

## ORDER

KOVACHEVICH, Chief Judge.

This cause is before the Court on Defendant McKinnon's Motion to Vacate, Set Aside, or Correct Sentence by a Person in Federal Custody Pursuant to 28 U.S.C. § 2255 and Motion for the Modification of an Imposed Term of Imprisonment Pursuant to 18 U.S.C. § 3582(c)(2) (Docket No. 414) and the Government's Answer in Opposition thereto (Docket No. 416).

This Order will only address Defendant's § 2255 motion. There is no need to address Defendant's § 3582 motion until her § 2255 motion is finally resolved. Moreover, if Defendant's sentence is ultimately vacated, then Defendant's § 3582 motion becomes moot.

On May 7, 1993, Defendant was found guilty, by a jury, of one (1) count of conspiracy to distribute crack cocaine, in violation of 21 U.S.C. § 846. On July 21, 1993, Defendant was sentenced to life imprisonment. Defendant subsequently appealed her conviction which was affirmed on January 6, 1997. On September 18, 1997, Defendant moved for sentence modification pursuant to 18 U.S.C. § 3582(c)(2) and sentencing guideline amendments 505, 509, and 519. On October 24, 1997, the Court held a hearing on the Government's Rule 35 motion. At the hearing, Defendant's present counsel, Darlene Calzon Barror, made representations to the Court which indicated that a motion to vacate sentence under § 2255 was more appropriate than proceeding on the Government's Rule

35 motion. Based on these representations, the Court continued the Rule 35 hearing, deferred ruling on Defendant's § 3582 motion, and allowed the Defendant thirty (30) days in which to file her § 2255.

In Defendant's § 2255 motion, she contends that she did not receive her constitutionally guaranteed right to effective assistance of counsel. Defendant asserts that her trial counsel exhibited "an inordinate concern for the outcome in the case and fate of the other co-defendants, to the detriment of [Defendant]." In addition, Defendant argues that her trial counsel did not adequately inform her of the true nature of the Government's plea offer and as a result, Defendant elected to go to trial rather than accept the Government's offer. Significantly, Defendant's trial counsel has written a letter to Defendant admitting that his representation was defective.

## I. Ineffective Assistance of Counsel

The Defendant's claim that she was deprived of her Sixth Amendment right to effective assistance of counsel is properly raised on collateral attack and is appropriately considered in this § 2255 motion. *See United States v. Souder,* 782 F.2d 1534, 1539–40 (11th Cir.1986). "The benchmark for judging any claim of ineffectiveness must be whether counsel's conduct so undermined the proper functioning of the adversarial process that the trial cannot be relied on as having produced a just result." *Strickland v. Washington,* 466 U.S. 668, 687, 104 S.Ct. 2052, 2064, 80 L.Ed.2d 674 (1984).

Defendant's claim that her representation was so defective as to require reversal of her conviction must satisfy the two part test announced in *Strickland.* In order to prevail, Defendant must not only show that her trial counsel's performance was deficient, but also that she was prejudiced by said performance. *Id.*

### A. Conflict of Interest

■ Defendant argues that her trial counsel, Frank T. Johnson, Esq., has admitted in a letter sent to her that he exhibited an inordinate concern for the outcome in the case and the fate of the other co-defendants, to the detriment of his client. The letter, dated January 28, 1997, provides:

I was overly concerned about the effect of your testimony at the trial on the other defendants.

You could have given the jury a different view of the critical issues that seemed to tie you into the conspiracy. You may have been able to give the jury a reason to have acquitted you based on your testimony.

Further, there was no tactical advantage to be gained by your refusal to testify. You had no prior record. Additionally, testifying at the trial would only have helped your case. There was no way for you to have been harmed by testifying.

Letter from Trial Counsel, Johnson, to client McKinnon, cc: Appellate Counsel, Barror, dated January 28, 1997.

Defendant asserts that she was wrongfully advised not to take the stand in her own defense, and her trial counsel now concedes that such a decision was of no tactical advantage to Defendant, trial counsel's only client. Defendant argues that, "[i]t is difficult to determine the impact that this defendant's testimony could have had on the jury, though it may have been considerable, but to take the stand was clearly in the defendant's best interest in order to give the jury an alternative perspective on the facts before them."

Moreover, Defendant urges that her trial counsel was appointed to protect solely Defendant's interest. Defendant argues that, after her trial counsel advised Defendant not to accept the Government's plea offer, he had the duty, as an officer of the court, to promote Defendant's best interests and supply her with the most effective counsel possible at trial, regardless of the impact it may have had on any of the other individuals involved. Defendant contends that her trial counsel instructed her not to testify on her own behalf and the reasoning behind this advice was based on Mr. Johnson's inappropriate

conflicted concern for the well-being of the co-defendant's.

Conversely, the Government argues that the Court must give great deference to the choices made by defense counsel in the conduct of a trial that are arguably dictated by a reasonable trial strategy. *See Devier v. Zant*, 3 F.3d 1445, 1450 (11th Cir.1993). Moreover, the Government asserts that strategic choices made after thorough investigation of law and facts relevant to plausible options are virtually unchallengeable. The Government maintains that "[s]ound tactical decisions within the range of reasonable professional competence are not vulnerable to attack." Moreover, the Government argues that every effort must be made to eliminate the distorting effects of hindsight, to reconstruct the circumstances of counsel's challenged conduct, and to evaluate the conduct from counsel's perspective at the time. *See Weeks v. Jones*, 26 F.3d 1030, 1036 (11th Cir.1994).

As a preliminary matter, it causes this Court a great deal of concern that the Government is attempting to equate "sound tactical decisions" with Defendant's trial counsel not explaining the bottom line of the plea offer and sacrificing his client to benefit other represented parties. The Court finds Defendant's trial counsel's alleged behavior inexcusable. Perhaps the only saving grace may be that he has now come forward and admitted his wrongdoing. The *Strickland* Court warned against the distorting effects of hindsight "[b]ecause of the difficulties inherent in [evaluating the conduct from counsel's perspective at the time], a court must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance ..."

■ This precaution does not apply to the case *subjudice.* There is no "difficulty inherent" in evaluating whether or not counsel should have sacrificed his client for the sake of the co-defendants. Mr. Johnson was obli-

gated to serve Defendant's best interests. This is not the type of case where the Court is inappropriately second guessing counsel's trial strategy using the benefit of hindsight. Here, the Court is essentially looking back at the "scene of the crime." Defendant's claim would seem unbelievable if not for her trial counsel's admissions.[1] However, Mr. Johnson states that he was looking after the co-defendant's well-being, rather than that of his client. Moreover, in the January 28, 1997, letter, Mr. Johnson states that: "I have come to the opinion and belief that the reason for your conviction is largely due to the fact that you did not take the stand and testify."

Assuming *arguendo* that Defendant's allegations are true, the Court cannot conceive of many more likely circumstances where an individual has been deprived of the effective assistance of counsel. If Mr. Johnson had not provided Defendant *any* counsel, Defendant would have been better off. Instead, Defendant was given advice, not to protect herself, but rather to insulate her co-defendants from harm. As a result, the co-defendants received *very* effective assistance of counsel, however inappropriate, whereas Defendant received life imprisonment. It appears that Mr. Johnson's performance was adversely affected by his alleged conflict.

Nevertheless, the Government argues that if the Court finds some deficiency in the performance of Defendant's counsel, Defendant is not entitled to relief unless prejudice is shown, pursuant to the test outlined in *Strickland.* The Government asserts that when a Defendant fails to make a sufficient showing of prejudice, the Court need not even address the adequacy of his counsel's performance. *See Strickland,* 466 U.S. at 695–96, 104 S.Ct. at 2069.

The Government points out that Defendant has not explained exactly what Defendant could have provided by testifying that would have given the jury a "different view of the

---

**1.** The "admissions" in the letter are too vague to be dispositive; therefore an evidentiary hearing is required.

critical issues" or "alternative perspective on the facts." Moreover, the Government argues that it fails to see how Defendant would have been able to "give the jury a reason to have acquitted" Defendant, as Mr. Johnson has stated. The Government asserts that Defendant has subsequently admitted her involvement in the conspiracy and has indicated that if her sentence is vacated, she will plead guilty to the same charges.

The Government maintains that there was substantial evidence presented at trial that demonstrated that Defendant was an active participant in the conspiracy. The Government explains that it offered numerous audio tapes which clearly demonstrated Defendant's involvement. The Government argues that had Defendant testified at trial, she certainly would have been cross-examined about the audio tapes as she was when she testified untruthfully at her sentencing hearing. The Government directs the Court's attention to Defendant's contention that "[i]t is difficult to determine the impact that this defendant's testimony could have had on the jury, though it may have been considerable...." The Government argues that Defendant's testimony would have been considerable—considerably bad. The Government asserts that had Defendant testified, her testimony would have been detrimental; therefore, her trial counsel's advice appears to have been excellent advice.

■ In order to establish a violation of the Sixth Amendment for ineffective assistance of counsel due to conflict of interest, a defendant must demonstrate that an actual conflict of interest adversely affected her lawyer's performance. *See Cuyler v. Sullivan,* 446 U.S. 335, 100 S.Ct. 1708, 64 L.Ed.2d 333 (1980). Once a defendant shows both actual conflict and adverse effect, prejudice is presumed and the defendant is entitled to relief. *See Lightbourne v. Dugger,* 829 F.2d 1012, 1023 (11th Cir.1987).

In order to prevail on an ineffective-assistance-of-counsel claim based on a conflict of interest, a habeas petitioner must demonstrate that an "actual conflict of interest adversely affected his lawyer's performance." An "actual conflict" of interest occurs when an attorney has "inconsistent interests." To prove that the conflict "adversely affected" his representation, the "petitioner **need not show that the result of the trial would have been different without the conflict of interest, only that the conflict had some adverse affect on counsel's performance.**"

*Freund v. Butterworth,* 117 F.3d 1543, 1571 (11th Cir.1997) (citations omitted) (emphasis added).

Significantly, Defendant's trial counsel's statement implicates an inappropriate concern for the co-defendants, rather than Defendant, which tends to evidence an actual conflict. Moreover, Mr. Johnson's advice that Defendant not testify appears to illustrate Mr. Johnson's inconsistent interests. This is especially so since Defendant persuaded others to plead, which obligated them to testify against Defendant. In addition, Mr. Johnson's conflict of interest may have been the basis for Defendant's rejection of the Government's plea offer, or at least, not becoming adequately informed of the ultimate sentence which could result from the agreement. This would indicate Mr. Johnson's performance was "adversely affected." If the alleged conflict had an adverse affect on Defendant's trial counsel's performance, then prejudice can be presumed.

### B. Plea Offer

Defendant contends there is evidence that, from early on in the case, Defendant planned to accept the plea offer from the Government. Defendant points out that she was instrumental in getting her brother to accept the plea offer made to him, while fully aware that the standard plea agreement in the Middle District of Florida, Tampa Division, contains a cooperation clause which obligated anyone accepting a plea to testify against Defendant if she went to trial. Defendant argues that her trial counsel advised Defendant against accepting the plea offer made by the Government. Defendant claims that

her trial counsel's admitted conflict and inappropriate concern for the well-being and fate of the co-defendants demonstrates that Mr. Johnson's assistance falls below an objective level of reasonableness. Defendant asserts that Defendant was advised not to accept the plea because under the plea agreement's cooperation clause, Defendant would have been obligated to testify against the co-defendants. In other words, Defendant contends that not only did her trial counsel know that the very co-defendant that Defendant persuaded to plead would have to testify against her, but Mr. Johnson advised her not to accept a plea offer herself and not to take the stand on her own behalf at trial in order to protect the co-defendants.

If Mr. Johnson did sacrifice Defendant as claimed, there is no doubt that Defendant has been prejudiced. Defendant may very well have accepted the plea offer by the Government otherwise. If Defendant's assertions are true, then her trial counsel's representation clearly involves an actual conflict of interest. However, the Court requires more evidence with regards to Defendant's trial counsel's alleged conflict and the impact thereof. The Court finds that Defendant should be given the opportunity to provide the Court with more precise evidence which demonstrates that Mr. Johnson impaired or compromised her interests for the benefit of another party. Therefore, an evidentiary hearing will be necessary and the Court expects that Mr. Johnson will be the key witness.

Defendant's claims appear to be plausible, especially in light of Defendant's claim that she was never made aware of the fact that the ten (10) year plea offer was characterized by the Government as resulting in a seven (7) year period of incarceration, due to the reduction resulting from the Government's filing of a 5K1.1 motion for the standard cooperation and assistance required. Defendant contends that she understood the plea offer to require a ten (10) year period of incarceration which was not acceptable. Defendant argues that by not explaining the resulting offer and its ramifications, Mr. Johnson never communicated to the Defendant the true nature of the offer, and that the seven (7) years would have been an acceptable agreement.

The Government contends that there is no evidence that Defendant ever wanted to accept any plea offer made by the Government. The Government maintains that every indication from Defendant and her attorney was that she was not willing to plead guilty under any circumstances. The Government asserts that Defendant indicated that she wanted to go to trial and that she rejected all plea offers made by the Government. The Government asserts that Defendant never indicated that an offer would be acceptable if it meant that she would have to go to prison.

Moreover, the Government argues that it was involved in numerous plea discussions with Defendant's trial counsel. The Government asserts that all of the plea discussions involved Defendant pleading guilty to count one (1) of the indictment which carried a base offense level of 42. The Government states that based on the use of firearms in the offense, a two (2) level upward adjustment would have been appropriate, which would have resulted in an offense level of 44.

The Government admits that it had agreed to recommend a two (2) level downward departure for acceptance of responsibility, which if accepted by the Court, would have resulted in a total offense level of 42. Nevertheless, the Government contends that Defendant still would have had a sentencing guideline range of 360 months to life imprisonment. Moreover, the Government explains that the recommended sentences were ultimately subject to an evaluation of the value of the assistance provided by the Defendant, and, subsequently, a determination by the Court if a motion to reduce sentence were filed.

The Government asserts that no specific term of sentence was to be set out in the agreement, nor was it an offer to plead to a specified period of incarceration. The Government maintains that it asked Mr. Johnson whether Defendant would plead and cooper-

ate if the Government ultimately could recommend a sentence of approximately ten (10) years. After being informed that that result was unacceptable, the Government asserts that it subsequently, asked Mr. Johnson whether a sentence somewhere near seven (7) years would be satisfactory. The Government states that Mr. Johnson subsequently informed counsel for the Government that he had a lengthy discussion with Defendant regarding the "seven year offer" and that she would not plead guilty if it meant going to prison.

 The problem with the Government's reliance on Mr. Johnson's alleged statements is that, if Mr. Johnson was not providing Defendant with effective counsel, then Defendant's rejection of the various offers is irrelevant. The client must be involved in the decision of whether to accept or reject a plea offer, and failure to inform the client of the offer constitutes ineffective assistance of counsel. *See Johnson v. Duckworth,* 793 F.2d 898, 902 (7th Cir.1986). The Defendant raises the issue of whether her trial counsel ever communicated the plea offer to her. Defendant argues that she was not adequately informed and her trial counsel's failure to communicate the totality of the plea offer left the Defendant to accept or reject this offer with an incomplete reasonable understanding of her proposed fate; therefore, she was deprived of the effective assistance of counsel. The Government's contention that "the decision to reject the plea offer was made by the [Defendant]" is fatally flawed. Defendant may be able to prove that, but for her trial counsel's advice or inaction, she would have accepted the plea offer.

## II. Conclusion

Defendant has made some very significant allegations regarding her trial counsel's performance at trial. If Defendant can convince this Court, through testimony or otherwise, that an actual conflict existed, then clearly Defendant has been prejudiced as discussed above. Furthermore, if Defendant's trial counsel did not communicate the "seven (7)

year plea offer" to Defendant, then Defendant must show that but for her attorney's errors, she would have accepted the plea offer. *See Diaz v. United States,* 930 F.2d 832, 835 (11th Cir.1991).

The Government contends that Defendant elected to proceed to trial and was convicted. The Government argues that it is apparent now, as it was at the time of Defendant's sentencing, that Mr. Johnson was clearly upset with the ultimate outcome of the proceedings. The Government asserts that the claims made by the Defendant and her former counsel are disingenuous and it is merely an attempt to recapture the lost opportunities to resolve Defendant's charges with a plea, rather than to face the consequences of the path Defendant voluntarily chose to pursue.

Defendant's allegations carry some serious ethical implications, if true. The Court will not overturn Defendant's conviction unless Defendant provides some truly compelling evidence that her trial counsel was ineffective. However, if Defendant is able to prove her allegations, this will inevitably result in a recommendation that the Florida Bar investigate the circumstances of the representation provided to Defendant and possibly other counsel involved.

The Court does not foresee a vague explanation that will provide Defendant with relief and absolve counsel involved. Therefore, Defendant must be prepared to substantiate specific instances of actual conflict which shows that her attorney compromised her interests for the benefit of another party, or alternatively, that her attorney failed to inform Defendant the true nature of the plea agreement and, but for the defective advice, Defendant would have accepted the offer. Consequently, an evidentiary hearing is necessary. Accordingly, it is

**ORDERED** that the **an evidentiary hearing shall be scheduled to resolve the Defendant's motion.** Argument will be limited to the issues discussed in this Order. A **Status Conference is scheduled for Friday, March 6, 1998, at 10:00 a.m., United States**

Courthouse, 611 N. Florida Avenue, in Room 411, Tampa, FL 33602, at which, the parties must inform the Court with regards to the expected number of witnesses and any time constraints which may affect scheduling the evidentiary hearing.