[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT
_____

FILED
U.S. COURT OF APPEALS
ELEVENTH CIRCUIT
FEB 3, 2011
JOHN LEY
CLERK

No. 10-12078
Non-Argument Calendar
_____

D.C. Docket No. 0:09-cr-60229-JIC-1

UNITED STATES OF AMERICA,

Plaintiff-Appellee,

versus

JAY ANTHONY RICHITELLI,

Defendant-Appellant.

_____

Appeal from the United States District Court
for the Southern District of Florida

_____

(February 3, 2011)

Before BLACK, HULL and WILSON, Circuit Judges.

PER CURIAM:

After a jury trial, Jay Richitelli appeals his convictions for conspiring and

attempting to commit a Hobbs Act robbery of a gas station money courier,

conspiring to use and carry and using a firearm during the commission of a crime of violence, and being a felon in possession of a firearm. After review, we affirm.

## I. BACKGROUND

### A. Attempted Robbery of Gas Station Courier

We first review the government's trial evidence. Twin Oil Company ("Twin Oil") owns 32 gas stations in Florida. John Cherico, Twin Oil's money courier, ran a regular, twice-weekly pick-up from Twin Oil's seven Sunoco gas stations in Broward County. The only person who knew Cherico's route was his supervisor. The last gas station on Cherico's route was at 7520 Pembroke Road. On August 25, 2009, Cherico retrieved $64,000 from the seven gas stations.

On that date, due to a recent rash of burglaries, Pembroke Pines Detective Dean Soubasis was patrolling in the area of 7520 Pembroke Road in an unmarked car. Detective Soubasis saw a silver Volkswagen with a driver and a passenger parked across a sidewalk. Just before the Volkswagen pulled away, Detective Soubasis saw the passenger put on a pair of black gloves.

Detective Soubasis followed the Volkswagen and, when it failed to stop at a stop sign, performed a traffic stop. Detective Soubasis issued the driver, Henry Wainwright, a citation. Detective Soubasis smelled marijuana coming from the car. Detective Soubasis asked Wainwright to exit the car, searched Wainwright

2

and found a small bag of marijuana and some rolling papers in Wainwright's pocket.

Wainwright's passenger, Niegel Smith, admitted to Detective Soubasis that he and Wainwright were on their way to rob a money courier at a Sunoco gas station around the corner (i.e., 7520 Pembroke Drive). Smith indicated that he and Wainwright were waiting for a call from a third person, Defendant Richitelli, who was watching the gas station's courier. Detective Soubasis arrested Wainwright and Smith. A search of Wainwright's car uncovered a loaded firearm under the front passenger's seat and some black gloves.

Smith testified that, since November 2008, Defendant Richitelli had been receiving information about the money courier's route from an unknown "inside person" who owed Defendant Richitelli money. Defendant Richitelli and Wainwright approached Smith on August 13, 2009, and asked him to help rob the money courier. Smith agreed. The three men decided to commit the robbery on August 29, 2009, because, according to the inside person, the courier collected more money when school was in session.

A week beforehand, Richitelli, Smith and Wainwright began planning how to execute the robbery. Defendant Richitelli had a list of the courier's stops, and the three men conducted surveillance of the courier as he drove his route.

According to their plan, Richitelli's job during the robbery was to surveil the courier and let Smith and Wainwright know when the courier was headed to the last pick-up. Smith's job was to approach the courier with the firearm and take the money from him and drive away in the courier's car. Wainwright's job was to drive Smith to the gas station and then meet Smith at a prearranged location after the robbery.

The night before the planned robbery, Richitelli met with the inside person, who gave Richitelli information about the courier. The morning of the robbery, the three men met at Richitelli's residence. Richitelli gave Smith a gun and some black gloves to use in the robbery. The gun was wrapped in a white towel to avoid fingerprints. Richitelli also gave Smith information about the courier's route, appearance, car, gun and amount of money. Richitelli left in a Chrysler to go to the courier's second-to-last stop to conduct surveillance. Wainwright and Smith left in the Volkswagen and circled the area around the last stop.

Eventually, Wainwright parked on a sidewalk near the gas station to roll a marijuana cigarette. Richitelli called and said the courier was leaving the second-to-last pick-up. Wainwright drove the Volkswagen off the sidewalk and was heading toward the gas station when he was pulled over by law enforcement. After the car was stopped, Smith saw Richitelli's Chrysler drive by.

4

**B.      Richitelli's Confession**

Later that day, Gerard Starkey, a task force officer assigned to the Federal Bureau of Investigation ("FBI"), interviewed Defendant Richitelli at the Pembroke Pines Police Department. After receiving a <u>Miranda</u> warning, Defendant Richitelli admitted his participation in the attempt to rob the money courier, but claimed that Wainwright planned the operation. Richitelli said that he was a confidential informant ("CI") working with Detective John Sousa of the Broward County Sheriff's Office ("BCSO"), but admitted that he had not told Detective Sousa about the planned robbery. Agent Starkey contacted Detective Sousa and confirmed that Richitelli was a CI and that Detective Sousa was unaware of the plan to rob the money courier.

**C.      Richitelli's CI Relationship with Detective Sousa**

Detective Sousa met Richitelli in November 2008 through the Broward County State Attorney's Office. Richitelli was contracted to be a CI by Detective Sousa on behalf of the BCSO. Under his CI contract, Richitelli: (1) was not allowed, <u>inter alia</u>, to possess a firearm or be involved in any criminal activity, and (2) was required to notify Detective Sousa and await permission before investigating anyone. At the time of the attempted robbery, Richitelli was working with Detective Sousa on a prescription-pain-killer drug operation.

Although Detective Sousa and Richitelli spoke on the telephone on August 24 and 25, 2009, Richitelli never mentioned a robbery planned for August 25.

According to Detective Sousa, Richitelli had a tendency to talk a lot and, during one investigation, waited three days before alerting Detective Sousa that he had been approached about committing a crime. Detective Sousa had counseled Richitelli to contact him before meeting with any suspects.

## D. Indictment

After his confession, Richitelli was arrested. Richitelli was appointed counsel, who filed a written invocation of Richitelli's right to remain silent and to counsel. A superseding indictment charged Richitelli, along with Wainwright and Smith, with conspiracy to commit a Hobbs Act robbery, in violation of 18 U.S.C. § 1951(a), (Count 1); attempting a Hobbs Act robbery, in violation of 18 U.S.C. § 1951(a), (Count 2); conspiring to use and carry a firearm during and in relation to a crime of violence, in violation of 18 U.S.C. § 924(o), (Count 3); carrying a firearm during and in relation to a crime of violence, in violation of 18 U.S.C. § 924(c)(1)(A), (Count 4); and possessing a firearm after being convicted of a felony, in violation of 18 U.S.C. § 922(g)(1), (Count 6). Richitelli filed a notice of

public authority defense, claiming that, at the time of his arrest, he was working as a documented CI for Detective Sousa.[1]

**E.      Richitelli's Recorded Call to Detective Sousa**

On October 30, 2009, while Richitelli was in pretrial detention at the Federal Detention Center ("FDC") in Miami, Richitelli called Detective Sousa. Because all calls from the FDC are recorded, the government had a recording of Richitelli's call to Detective Sousa.

Prior to trial, Richitelli moved to suppress the recorded call, arguing that, at the time of the call, he had appointed counsel and had not waived his right to counsel. The government responded that Richitelli knew when he placed the call to Detective Sousa that it would be recorded because (1) he was advised during intake at the FDC that phone calls were recorded; (2) signs posted in the FDC alerted him that phone calls were recorded; and (3) interruptions during phones calls stated that calls were recorded. The district court denied Richitelli's motion to suppress, finding that Richitelli had initiated contact with Detective Sousa voluntarily and had impliedly waived his Fifth and Sixth Amendment rights.

---

[1]The public authority defense is an affirmative defense under which the defendant must show that he reasonably relied upon the authority of a government official authorizing the defendant to engage in an illegal activity. United States v. Baptista-Rodriguez, 17 F.3d 1354, 1368 n.18 (11th Cir. 1994); United States v. Johnson, 139 F.3d 1359, 1365 (11th Cir. 1998).

7

At trial, the government played the recorded call and introduced redacted transcripts.[2]  During the call, Richitelli denied being involved in the planned robbery.  Richitelli said that Wainwright "popped up," and Richitelli "wanted to see what was going on."  Richitelli claimed that Wainwright broke into his shed and took the firearm without his knowledge.  Detective Sousa scolded Richitelli for getting involved in crimes outside his CI relationship, repeatedly told Richitelli that he (Sousa) had nothing to do with Richitelli's federal robbery case, and advised Richitelli to cooperate with the FBI.

## F.      Proposed Defense Witness Steve Emerson

At trial, Richitelli asked to call Steven Emerson, Richitelli's former supervising agent at the Florida Department of Law Enforcement.  Defense counsel argued that Emerson's testimony was relevant "to show Mr. Richitelli's actions as a confidential informant, how he acts in a very - -  that he's very active, that he talks a lot, that sometimes he doesn't think before he acts, and that he's not - - he's very good at gathering information, he's very good at conducting investigations and that he somewhat needs very strict supervision, and as late as 2007, he was able to refer a case for prosecution."  After defense counsel

---

[2]For reasons that are not pertinent to this appeal, portions of the transcript were redacted pursuant to the district court's pre-trial order.

conceded that Emerson had not had any contact with Richitelli since 2008 and did not have anything to do with the instant case, the district court denied the request.

**G.     District Court's Inquiry Into Richitelli's Decision to Testify**

During trial, but out of the jury's presence, the district court asked defense counsel, "Do you mind if I inquire of your client regarding his right to testify and his right not to testify?" Defense counsel responded that he "would support the Court to do that," and the district court confirmed with Richitelli that: (1) he understood that he had a right to testify and not to testify; (2) he understood that if he elected to testify, information about the number of felony convictions he had could be brought out and he would be subject to cross-examination; (3) he had fully discussed the issue of whether to testify with his attorney; and (4) he had not yet decided whether to testify.

The next day, before the defense rested, the district court asked whether Richitelli was going to testify. Defense counsel stated, "I don't believe so, but at this time I would invite the Court to voir dire him." The district court pointed out that it had already asked Richitelli some questions and then confirmed that the government would not object to a jury instruction on the public authority defense even if Richitelli did not testify. Defense counsel then asked Richitelli whether he wanted the district court to inquire. Richitelli nodded his head affirmatively.

The district court again discussed with Richitelli his decision whether to testify and learned that Richitelli had decided not to take the stand, as follows:

> THE COURT: All right. Well, I will be more than happy to.
>
> As I was explaining to you yesterday, you essentially have two rights. You have a right to testify and you have a right not to testify. If you do elect to testify, you would be subject to cross-examination by the government.
>
> In other words, Mr. Chase could ask you questions, and he could bring out the fact that you've been convicted of more than one felony.
>
> Now, I don't know how many felony convictions you have, but whatever number that is, Mr. Chase could bring that out. As it stands right now, the jury is only aware of one felony conviction.
>
> Now, if you elect not to testify, the jury is advised that that cannot be considered by them in any way in arriving at their verdict. They can't conclude that by virtue of the fact that you elected not to testify that you've got something to hide, and you are guilty.
>
> Have you had enough time to discuss the issue of whether or not you should testify with your two lawyers?
>
> THE DEFENDANT: Yes, Your Honor. I discussed with Mr. Tucker about me testifying in the case, and he gave me his statement and, you know, his theory on it. And since I had my accident with an aneurysm and my IQ level ain't very high, so I decided I ain't going to testify because I won't remember everything periodically because I lose my memory sometimes.
>
> THE COURT: Is that your decision?
>
> THE DEFENDANT: Yes, Your Honor.

## H. Jury Instruction on Count 3

During the charge to the jury, the district court instructed the jury on the elements of Counts 1 and 2, which charged Richitelli with conspiracy and attempt to commit a Hobbs Act Robbery. As to Count 3, which charged Richitelli with

10

conspiracy to use a firearm during the commission of a crime of violence, the

district court stated:

> Now, Count 3 charges that defendant Jay Anthony Richitelli did knowingly and intentionally combine, conspire, confederate, and agree with others to use and carry a firearm during and in relation to a crime of violence. That is, a violation of Title 18 United States Code Section 1951(a) as set forth in Counts 1 and 2 of the indictment and to possess said firearm in the furtherance of such crimes, all in violation of Title 18 United States Code Section 924(c)(1)A.
>
> It is further alleged that the firearm is a Beretta .40 caliber pistol. The definition of a conspiracy was explained in Count~1 the -- in the Count~1 instruction. Such information will not be repeated, but reference can be made during deliberations to the portion of Count 1 that addresses conspiracy if the need arises.
>
> Title 18 United States Code Section 924(c)(1) makes it a separate federal crime or offense for anyone to carry a firearm during and in relation to a crime of violence or possess a firearm in furtherance of a crime of violence.
>
> The defendant can be found guilty of the conspiracy offense charged in Count 3 of the indictment only if all of the following facts are proved prosecute [sic].
>
> First, that the defendant conspired to commit the crime of violence charged in Count~1 of the indictment.
>
> Second, that during the commission of that offense, the defendant knowingly carried or possessed a firearm as charged.
>
> And third, that the defendant carried the firearm in relation to or possessed the firearm in furtherance of the crime of violence.

After concluding the jury charge, the district court asked the parties whether they

had any new objections to the instructions or the manner in which they were read.

Defense counsel responded that he had no objections.

11

The jury found Richitelli guilty on all counts. The district court sentenced Richitelli to imprisonment terms of life on Counts 1 and 2, 240 months' imprisonment on Count 3, and 180 months' imprisonment on Count 6, all to run concurrently, and 60 months' imprisonment on Count 4, to run consecutively to the other counts. Richitelli filed this appeal.

## II. DISCUSSION

### A. Motion to Suppress Recorded Call to Detective Sousa

Richitelli contends that the district court should have suppressed his recorded call to Detective Sousa because Richitelli had already invoked his right to counsel and did not waive it before speaking to Detective Sousa.[3]

"[O]nce the adversary judicial process has been initiated, the Sixth Amendment guarantees a defendant the right to have counsel present at all 'critical' stages of the criminal proceedings." Montejo v. Louisiana, 556 U.S. __, 129 S. Ct. 2079, 2085 (2009). "Interrogation by the State is such a stage." Id. A Sixth Amendment violation occurs when (1) government agents (2) deliberately elicit incriminating statements from an accused after he has been indicted, outside the presence of counsel, and (3) in the absence of any waiver of his Sixth

---

[3]With respect to a district court's denial of a motion to suppress, we review its findings of fact for clear error and its interpretation and application of the law de novo. United States v. Emmanuel, 565 F.3d 1324, 1330 (11th Cir.), cert. denied, 130 S. Ct. 1032 (2009).

Amendment rights. Fellers v. United States, 540 U.S. 519, 523-25, 124 S. Ct. 1019, 1022-23 (2004). The district court concluded that Richitelli impliedly waived his Sixth Amendment right to counsel when he initiated the call to Detective Sousa from the FDC knowing that the call would be recorded.

We need not reach the waiver issue for two reasons. First, a review of the transcript of the conversation reveals that Detective Sousa, even if he qualified as a "government agent," did not take any action designed to deliberately elicit incriminating statements from Richitelli. See Kuhlmann v. Wilson, 477 U.S. 436, 459, 106 S. Ct. 2616, 2630 (1986) (explaining that the defendant must show that the government agent "took some action, beyond mere listening, that was designed deliberately to elicit incriminating remarks). Detective Sousa did not directly question Richitelli about his involvement in the attempted robbery and did not play on Richitelli's emotions to elicit incriminating statements. Detective Sousa did not engage in a prolonged discussion of the details of the offenses or Richitelli's involvement in them. Indeed, Detective Sousa repeatedly informed Richitelli that he knew nothing about the federal robbery case and could not help Richitelli. The main thrust of Detective Sousa's statements to Richitelli was to stress the seriousness of the federal charges and to urge Richitelli to cooperate with the FBI in any way that he could.

Second, even if Richitelli satisfied all three requirements to show a Sixth Amendment violation, any error in admitting the recorded call to Detective Sousa was harmless beyond a reasonable doubt. See United States v. Gari, 572 F.3d 1352, 1362 (11th Cir. 2009) (explaining that the "test for determining whether a constitutional error is harmless . . . is whether it appears beyond a reasonable doubt that the error complained of did not contribute to the verdict obtained" (quotation marks omitted)), cert. denied, 120 S. Ct. 1562 and Rodriguez v. United States, 130 S. Ct. 1560 (2010). The government presented overwhelming evidence of Richitelli's guilt, including: (1) Smith's testimony that Richitelli provided the gun and information about the courier and his route, helped plan the robbery and acted as surveillance, notifying Smith and Wainwright when the courier reached his last stop; (2) Agent Starkey's testimony that Richitelli admitted being involved in the robbery scheme; and (3) Detective Sousa's testimony that Richitelli did not have the authority to be involved in the robbery as his CI.

During the recorded conversation, Richitelli did not admit that he was involved in the robbery scheme. At most, the recorded conversation constituted evidence that Detective Sousa never gave Richitelli the authority, as his CI, to become involved in the robbery. As such, however, this evidence was cumulative

14

of Detective Sousa's testimony that he was unaware of the planned robbery and Agent Starkey's testimony that, during Richitelli's confession, Richitelli admitted that he had not told Detective Sousa about the robbery. Under the circumstances, we readily conclude beyond a reasonable doubt that the admission of the recorded conversation did not contribute to the jury's guilty verdict.

**B.     District Court's Inquiry into Richitelli's Decision not to Testify**

Richitelli argues that the district court erred in discussing his decision whether to testify. We agree with the government that Richitelli invited any error in this regard.

We are precluded "from reviewing an issue raised on appeal if it has been waived through the doctrine of invited error." United States v. Brannan, 562 F.3d 1300, 1306 (11th Cir. 2009). This Court has applied the invited error doctrine when the alleged error was the result of a defendant's responses to the district court's questions. See, e.g., United States v. Thayer, 204 F.3d 1352, 1355 (11th Cir. 2000).

Here, the district court received defense counsel's permission before directly addressing Richitelli about his right to testify. Later, defense counsel asked the district court to discuss the issue again with Richitelli. When the district court seemed reluctant and pointed out that he had already discussed Richitelli's

right to testify with him, defense counsel asked Richitelli whether he wanted the district court to discuss his right to testify again. Richitelli indicated that he did.[4]

Even if Richitelli has not invited error, he did not object to the inquiry in the district court, and there is no plain error. See United States v. Peters, 403 F.3d 1263, 1270 (11th Cir. 2005). To be "plain," an error must be clear under current law. United States v. Frank, 599 F.3d 1221, 1239 (11th Cir.), cert. denied, 131 S. Ct. 186 (2010). The cases Richitelli relies upon conclude only that a trial court is not required to advise a criminal defendant of his right to testify and do not, as Richitelli suggests, restrict trial courts from such an inquiry. See United States v. Teague, 953 F.2d 1525, 1532-33 (11th Cir. 1992); United States v. Van De Walker, 141 F.3d 1451, 1452 (11th Cir. 1998). Richitelli has not shown that the district court's inquiry was plain error.

## C. Jury Instruction on Count 3

Richitelli argues that the district court's jury instruction as to Count 3 constitutes reversible error because it did not state the proper object of the conspiracy.

Because Richitelli did not raise this objection to the Count 3 instruction in

---

[4]To the extent Richitelli's argument could be construed as a claim of ineffective assistance of counsel, we decline to address this issue on direct appeal. See United States v. Souder, 782 F.2d 1534, 1539-40 (11th Cir. 1986).

the district court, our review here is also for plain error.[5]  See United States v. Felts, 579 F.3d 1341, 1343 (11th Cir. 2009) (explaining that "jury instructions that are challenged for the first time on appeal are reviewed for plain error").  "Jury instructions will not be reversed for plain error unless the charge, considered as a whole, is so clearly erroneous as to result in a likelihood of a grave miscarriage of justice, or the error seriously affects the fairness, integrity, or public reputation of judicial proceedings."  United States v. Starke, 62 F.3d 1374, 1381 (11th Cir. 1995).

Here, the district court did not commit error, much less plain error.  Contrary to Richitelli's contention, the district court's instruction on Count 3 correctly stated at the outset that the object of the conspiracy was "to use and carry a firearm during and in relation to a crime of violence."  The district court then explained that the "crime of violence" charged in Count 3 was the conspiracy to rob the money courier charged in Count 1 and the attempt to rob the money courier charged in Count 2.  By quoting only the district court's subsequent

<hr>

[5]We reject the government's argument that Richitelli invited any alleged error as to the Count 3 instruction.  There was never any discussion between the district court and defense counsel about the Count 3 instruction.  This fact distinguishes Richitelli's case from the invited error cases cited by the government.  See United States v. Silvestri, 409 F.3d 1311, 1326-27 (11th Cir. 2005); United States v. Fulford, 267 F.3d 1241, 1247 (11th Cir. 2001).  Defense counsel's response to the district court's general inquiry at the conclusion of the jury charge indicating that he had no objections to the charge as a whole did not invite error as to the Count 3 instruction.

statement about what the government needed to prove for Richitelli to be found guilty, Richitelli ignores the basic principle that "the correctness of a jury charge must be considered in the context of the instructions as a whole." United States v. Wilk, 572 F.3d 1229, 1238 (11th Cir. 2009), cert. denied, 130 S. Ct. 1095 (2010). Viewed in its entirety, the district court's Count 3 instruction did not omit the object of the conspiracy charged in Count 3.

## D.      Proposed Defense Witness Agent Emerson

Richitelli argues that the district court erred when it excluded Agent Emerson's testimony on the ground that it was not relevant.

"Evidence which is not relevant is not admissible." Fed. R. Evid. 402. "A district court's decision to exclude evidence on grounds of relevance will not be disturbed unless it constitutes a clear abuse of discretion." United States v. Baptista-Rodriguez, 17 F.3d 1354, 1364 (11th Cir. 1994). The district court's discretion, however, does not extend to the exclusion of crucial, relevant evidence necessary to establish a valid defense. Id.

Richitelli argues that Agent Emerson's testimony was relevant to show Richitelli's modus operandi as a CI—that he tended to conduct initial investigations before receiving permission from his supervising agent—and was evidence that went to Richitelli's intent. To the extent Richitelli argues that Agent

18

Emerson's testimony was relevant to either his public authority defense or his "innocent intent," Richitelli did not argue these grounds for relevance in the district court. See United States v. Straub, 508 F.3d 1003, 1011 (11th Cir. 2007) (explaining that to preserve an issue for appellate review, the defendant must clearly raise the specific grounds for the objection). Instead, Richitelli told the district court that Agent Emerson's testimony would show that Richitelli, although a productive CI, was very active, talked a lot and needed strict supervision. This information had already been elicited from Detective Sousa. See United States v. Dohan, 508 F.3d 989, 993 (11th Cir. 2007) (explaining that a district court is within its discretion to exclude even relevant evidence that is cumulative).

Furthermore, Agent Emerson's proposed testimony was not relevant to any valid public authority defense in this particular case. This Court has concluded that a defendant may assert a valid public authority defense only if his reliance was on a real, rather than apparent, authority to perform the illegal acts in question. United States v. Anderson, 872 F.2d 1508, 1516 (11th Cir. 1989). Detective Sousa testified that he did not authorize Richitelli to engage in the robbery scheme as part of their CI relationship. Richitelli's modus operandi with his previous supervising agent was irrelevant to whether Richitelli reasonably relied upon the real authority of Detective Sousa. See, e.g., United States v.

19

Johnson, 139 F.3d 1359, 1365-66 (11th Cir. 1998) (concluding that the district court properly refused to admit evidence relating to public authority defense because the defendant failed to show any government involvement in the conspiracy). Under these circumstances, we find no abuse of discretion.

**AFFIRMED.**